UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| KYLE B. RICHARDS, # 641715, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:14-cv-77 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| KENNETH McKEE, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner seeks federal habeas corpus relief from his plea-based conviction and sentence.  On June 30, 2011, petitioner, represented by Attorney Emmett Hannick, appeared in Macomb County Circuit Court before Judge James M. Biernat, Jr. and entered his guilty plea pursuant to a plea agreement to the crime of bank robbery.  MICH. COMP. LAWS § 750.531.  In exchange petitioner's guilty plea and agreement to be sentenced as a 4th habitual offender, the prosecutor agreed not to object to petitioner receiving 36 months' imprisonment as the minimum component of his sentence.  On August 2, 2011, petitioner was sentenced in accordance with the plea agreement.  Petitioner received a sentence of 36 months to 20 years' imprisonment, with credit for time served.  (ST, 17-18, PageID.215; Sentence of Commitment, ECF No. 27-10, PageID.255.)

Petitioner asks this court to overturn his conviction and sentence on the following grounds:

I.      Ineffective Assistance of Counsel for not investigating the voluntariness of petitioner's plea and allowing him to plead guilty under duress.

II.     Petitioner's 3 to 20 year sentence for bank robbery, 4th habitual offender constitutes cruel and unusual punishment because it is not an individualized sentence.

III.    The trial court and trial counsel allowed petitioner to tender his guilty plea without affirming his competence, violating his rights to due process and the effective assistance of counsel.

(Am. Pet., ECF No. 14-1, PageID.73-80.)  Respondent filed his answer to the petition. He argues that the arguments found in Ground I were rejected by Michigan's courts and petitioner has not shown that the decision was "contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d).  Respondent argues that petitioner's Ground II claim that he was deprived of an individualized sentence presents an issue of state law which does not provide a basis for federal habeas corpus relief (28 U.S.C. § 2254(a)), and that his Eighth Amendment challenge to his sentence is plainly meritless.  Respondent argues that the claims asserted in Ground III are plainly meritless because petitioner had been evaluated for competency and it had been determined that he was competent.[1]

_____

[1]Respondent is correct that the federal claims petitioner is asserting in Grounds II and III were not exhausted in Michigan's courts. However, under 28 U.S.C. § 2254(b)(2) "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

-2-

District Judge Robert Holmes Bell has referred the matter to me for all purposes, including the issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts.  After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief.  I recommend that the petition be denied.

## **Standard of Review**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA), the provisions of that law govern the scope of the Court's review.  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (*per curiam*); *Felkner v. Jackson*, 562 U.S. 594, 597 (2011) (*per curiam*); *Renrico v. Lett*, 559 U.S. 766, 773 (2010).  "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).  Section 2254(e)(1) states:  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "State-court factual findings [] are presumed correct; the petitioner has the burden of

rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.   28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).   AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law.   *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).   It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Burt v. Titlow*, 134 S. Ct. 10, 16 (2013); *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786-87 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).   "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 562 U.S. at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with

respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *Davis v. Ayala*, 135 S. Ct. at 2198.

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

-5-

*White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. at 15.

## **Proposed Findings of Fact**

### A.    **District Court Proceedings**

On January 19, 2011, petitioner received a preliminary examination in the 39th District Court (Macomb County) on the bank robbery charge. (PE, ECF No. 27-2; *see also* Felony Information, ECF No. 27-12, PageID.466.) Petitioner was represented by Attorney Steven Kaplan. At the hearing, Ms. Anna Marie Christine Ambuster testified that on January 6, 2011, she was a teller/closing manager at the TCF Bank on Fifteen

-6-

Mile in Fraser, Michigan. She indicated that petitioner entered the bank. When he came up to Ambuster's teller station he put a note in front of her which directed her to "put the money on the table." She testified that she knew it was a robbery and she did not know whether petitioner had a weapon. She began handing over the bank's money. She handed over the stacks of fifty, twenty, ten and five dollar bills, but Petitioner said don't worry about it when she reached for the remaining one dollar bills. Petitioner never provided his name or provided an account number. Petitioner took the money, put it into a Meijer plastic bag, and walked out of the bank with the money. Petitioner was bound over for trial in Macomb County Circuit Court on the bank robbery charge. (ECF No. 27-12, PageID.468.)

### B. Circuit Court Proceedings

On February 7, 2011, petitioner was served notice of an enhanced sentence based on his three prior felony convictions. (ECF 27-12, PageID.464; *see also* ECF No. 27-4, PageID.202.) Petitioner's attorney Steven Kaplan filed a notice of insanity defense. (ECF No. 27-3, PageID.200.) The court entered orders in February and April 2011, directing that petitioner receive psychiatric evaluation related to petitioner's claim of insanity and to determine whether he was competent to stand trial. (*Id.* at PageID.200-201.)

On April 1, 2011, Attorney Daniel Garon filed a motion on petitioner's behalf asking to have the bank robbery charge quashed on the ground that Petitioner did not put any person in fear. (ECF No. 27-12, PageID.452-457.) Counsel argued that Petitioner did not hurt or threaten to hurt anyone. He did not brandish a weapon and

the victim indicated she had not reason to believe that Defendant had a weapon. On June 7, 2011, Circuit Court Judge James M. Biernat, Jr., denied petitioner's motion to quash the felony information. (ECF No. 27-4, PageID.202-204.) Judge Biernat noted that "Anna Marie Christine Ambuster testified a bank customer who she identified as the defendant, passed her a note at the teller window that said to 'Put the money on the table.'" She described herself as being nervous because she knew it was a robbery and she did not know if defendant had a weapon. Ambuster said defendant did not provide her with an account number; she handed money to defendant." (ECF No. 27-4, PageID.203.) Judge Biernat found that "[d]efendant's note establishes by probable cause that he had the intent to steal money from the bank. Ambuster's testimony also establishes defendant's actions placed her in fear and that, as a result, she gave money to the defendant." Accordingly, there had been no error in binding over petitioner for trial. (*Id.* at PageID.203-04.)

On June 30, 2011, petitioner appeared before Judge Biernat for the purpose of entering a guilty plea. (Plea Transcript (PT), ECF No. 27-5.) Petitioner was represented by Attorney Emmet Hannick. Petitioner signed the Advice of Rights Form acknowledging the rights that he was giving up by agreeing to plead guilty. (ECF No. 27-6, PageID.210.) Petitioner agreed to plead guilty pursuant to a *Cobbs* plea agreement.[2] He agreed to plead guilty to the bank robbery charge and that he would

---

[2]In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court held that at the request of a party, the judge "may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." 505 N.W.2d at 212. This preliminary

be sentenced as a 4th habitual offender.  The prosecutor did not recommend a 36 month minimum sentence, but agreed that the prosecution would not object to petitioner receiving 36 months as a minimum sentence.  Petitioner's attorney stated on the record that the prosecutor's description of the plea agreement was fair and accurate.  He stated: "I have spoken with my client relative to the offer of the plea of guilty, and it's my understanding that he will -- He's aware of what he's doing today and that he wishes us to proceed with the plea agreement."  (PT, 3-5, ECF No. 27-5, PageID. 206.)  Petitioner was placed under oath.  He expressed understanding that under the plea agreement he would have the benefit that his minimum sentence would be 36 months rather than 142 months:

> THE COURT: All right.  The plea agreement, as I understand it, is you're going to plead guilty to Count One, which is bank robbery; is that correct?
>
> THE DEFENDANT: Correct.
>
> THE COURT:      And the habitual 4th notice.
> There has been an agreement between your attorney and myself that the bottom of the guidelines comes to about 36 months, and that I will agree to sentence you at the bottom end of 36 months.  Do you understand that?
>
> THE DEFENDANT: Yes, I understand that.
>
> THE COURT:      The guidelines with the habitual 4 is 36 to --
>
> MR. HANNICK:      142.

---

evaluation does not, however, bind the judge at the time of sentencing.  After reviewing the presentence report, the judge may adhere to the initial assessment or not.  If the sentencing judge refuses to impose sentence in accordance with the initial assessment, defendant must be given an opportunity to withdraw the plea.  *Id.*

> THE COURT:        -- 142.  Okay.  So I'm agreeing to sentence you to 36 months on the bottom.  Do you understand that.
>
> THE DEFENDANT:        With credit for time served.
>
> THE COURT:        Yeah, whatever time.

(PT, 6, ECF No. 27-5, PageID.207).

Petitioner confirmed that no promises had been made to him other than those that had been placed on the record.  (PT, 7, ECF No. 27-5, PageID.207.)  Petitioner stated that he had not been forced to plead guilty and that he was freely and voluntarily pleading guilty:

> THE COURT:        Okay.  Has anyone forced you to plead guilty today.
>
> THE DEFENDANT:        No.
>
> THE COURT:        Are you pleading freely and voluntarily because you are guilty.
>
> THE DEFENDANT:        Correct.

(PT, 7-8,ECF No. 27-5,  Page ID.207.)  Petitioner testified that on January 6, 2011, he robbed a bank in the City of Fraser, Michigan.  (PT, 11, 12, ECF No. 27-5, PageID.208.) He testified that he went to the TFC Bank and gave a note to the teller demanding money.  In response to the note, the teller gave him money that he had demanded. Petitioner left the bank with the money that did not belong to him.  When petitioner was asked whether he had intended to steal the money, his response was: "Sure, Yes." (PT, 12, ECF No. 27-5 PageID.208.)  With regard to his history of prior felony convictions, petitioner admitted that on November 19, 2009, he had been convicted of assault of a prison employee, and on September 20, 2001, he had been convicted of 2

counts of assault of a FIA employee.  (PT, 13, ECF No. 27-5, PageID.208.)  Petitioner's attorney agreed to stipulate to the opinions of the forensic center with respect to competency and culpability.  Judge Biernat accepted petitioner's plea and the matter was set for sentencing.  (PT, 13-15, ECF No. 27-5, PageID.208-09.)

On August 2, 2011, petitioner appeared at his sentencing hearing.  (Sentencing Transcript (ST), ECF No. 27-7.)   Petitioner was represented by attorney Emmet Hannick.  At the beginning of this hearing, petitioner, through counsel, sought to withdraw his guilty plea.  Counsel indicated that petitioner had expressed his desire to make a statement.  Judge Bernat allowed petitioner to make that statement. Among other things, petitioner argued that he would not be willing to "settle" for the maximum sentence 300 months, but he was willing to take a sentence of up to 5 years. (ST, 7-8, ECF No. 27-7, PageID.213.)  In response, the prosecutor noted that petitioner had faced a potential sentence of life imprisonment for bank robbery as a 4th habitual offender.  Petitioner's assertion that he thought that he would receive a maximum sentence of only 3 years was nonsensical.  Petitioner had received a forensic examination and it indicated that he was competent and culpable.  Judge Biernat denied petitioner's motion because petitioner had freely and voluntarily entered his guilty plea on June 29, 2011.  It was further noted that petitioner had signed the agreement which clearly spelled out that 36 months was the minimum portion of his sentence. (ST, 12-13, ECF No. 27-7, PageID.214; *see also* Sentencing Information Report, ECF No. 27-12, PageID.425; Referral to Probation for Investigation, ECF No. 27-12, PageID.429.)  Petitioner did not contest that his crime had been bank robbery

-11-

and that he was a 4th habitual offender.  (ST 16,ECF No. 27-7,  PageID. 215.)  Judge Biernat sentenced petitioner in accordance with the plea agreement.  Petitioner received a sentence of 36 months to 20 years' imprisonment, with credit for time served.  (ST, 17-18, PageID.215; Sentence of Commitment to Department of Corrections, ECF No. 27-10, PageID.255.)

On January 12, 2012, petitioner, through Attorney Arthur H. Landau, filed a motion for resentencing, or in the alternative to allow petitioner to withdraw his guilty plea.  (ECF No. 27-12, PageID.396-415.)   On January 23, 2012, Judge Biernat conducted a hearing on petitioner's motion.  (Hearing Transcript (HT), ECF No. 27-8.) Attorney Landau confirmed that petitioner's existing sentence was the minimum sentence and that the court could not go any lower than the minimum sentence that petitioner had already received.   (HT, 4, 12, ECF No. 27-8, PageID.218,220.) Petitioner's attorney argued that he had been deprived of an individualized sentence because the court had not been apprised of accurate information regarding petitioner's Asperger's Syndrome and that petitioner's counsel had been ineffective when he failed to make Asperger's Syndrome an issue in relation to petitioner's plea and sentence. (HT 10-11, ECF No. 27-8, Page ID.220.)

On January 25, 2012, Judge Biernat entered his order denying petitioner's motion for resentencing, or in the alternative, to withdraw his guilty plea.  (ECF No. 27-9.)  He found no basis for resentencing because petitioner had been sentenced on the basis of accurate information and he rejected all petitioner's claims of ineffective assistance of counsel related to sentencing:

-12-

Defendant asserts that his sentence is invalid due to a lack of valid information.  He is mistaken.

The Center for Forensic Psychiatry Report dated June 29, 2011 noted defendant had previously been diagnosed with Asperger's Syndrome diagnosis.  The Report stated defendant "understood his various plea options in detail" and "was able to discuss in detail the different plea options . . . and possible parameters of acceptable plea agreements".  The Report concluded defendant was -- consistent with three prior findings from 2009 -- competent to stand trial and criminally responsible for his actions.

The instant Presentence Investigation Report noted defendant's significant psychiatric history and previous diagnosis of Asperger's Syndrome.  The Presentence Investigation Report also noted defendant's prior incarcerations, establishing the Department of Corrections' ability to handle prisoners with Asperger's syndrome and defendant's ability to live in prison.  Defendant challenged his asserted noncompliace with psychiatric and psychological rehabilitative initiatives and the information was not taken into account for sentencing purposes.  The probation officer shall complete an amended report deleting this information.  MCR 6.425(E)(2)(a).

Defendant twice raised the issue of his autism at sentencing, providing a history of his mental illness and blaming his behavior thereon. Significantly, the authority that defendant now cites does not establish Asperger's Syndrome necessarily deprives a person of the requisite mental state to commit and/or automatically necessitates a finding of a lack of criminal responsibility/culpability.

Defense counsel also reiterated defendant's autism as an issue to be considered at sentencing.

Therefore, defendant was sentenced on complete and accurate information.  Accordingly, he is not entitled to resentencing.

(Op. at 2-3, ECF No. 27-9, PageID.225-226(footnotes omitted).)

Judge Biernat denied petitioner's motion to withdraw his guilty plea because petitioner's guilty plea had been knowing and voluntary:

As a preliminary matter, defendant's reliance on the same issues found to lack merit in subsection A as grounds for withdrawing his guilty plea is misplaced.

At the plea hearing held on June 30, 2011, defendant claimed he had been the recipient of threats while in jail but not in relation to his "voluntary" decision to plead guilty. Indeed, defendant was specifically questioned in this regard and was forcing him to plead guilty. He maintained his plea was freely and voluntarily made because he was guilty. Defendant will not be allowed to belatedly impeach himself because of his unwarranted disappointment in his sentence.

Defendant was specifically informed at the plea hearing that his *Cobbs* agreement was thirty-six months on the minimum sentence. His asserted impression that his maximum sentence on his plea was three years wholly lacks merit. Indeed, defendant acknowledged his willingness to accept a five year (sixth month) maximum sentence before he was sentenced.

Therefore, defendant is not entitled to withdraw his guilty plea.

(Op. at 4, ECF No. 27-9, Page ID.227.)

## C.   Appellate Proceedings

Petitioner sought leave to appeal to the Michigan Court of Appeals. Petitioner sought relief on the following grounds:

I.   DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA?

II.   DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING DEFENDANT'S MOTION FOR RESENTENCING?

III.   WAS DEFENDANT DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE OF COUNSEL TO SCHEDULE AN INDEPENDENT PSYCHIATRIC OR PSYCHOLOGICAL EVALUATION OF DEFENDANT, CONSIDERING HIS MENTAL DISORDER OR TO INVESTIGATE DEFENDANT'S HISTORY WITH ASPERGER'S SYNDROME TO ACHIEVE AN "INDIVIDUALIZED SENTENCE" PRIOR TO DEFENDANT'S

-14-

PLEA, AND SENTENCE TO DETERMINE THE IMPACT OF
THAT CONDITION ON DEFENDANT'S CRIMINAL
RESPONSIBILITY AND COMPETENCY TO STAND TRIAL OR
WHETHER AND INSANITY DEFENSE OR AN ALTERNATIVE
PLEA AND SENTENCE WAS APPROPRIATE?

(Statement of Questions Presented, Defendant Appellant's Brief at viii, found in

Michigan Court of Appeals record, ECF No. 27-10 at PageID.237.)  On June 12, 2012,

the Michigan Court of Appeals denied petitioner's application for leave to appeal "for

lack of merit on the grounds presented." (ECF No. 27-10, PageID.229.)  On October 22,

2012, the Michigan Supreme Court denied petitioner's application for leave to appeal

because it was not persuaded that the questions presented should be reviewed by this

Court. (ECF No. 27-11, Page ID.271.)

## Discussion

## I.    Knowing and Voluntary Guilty Plea and Sixth Amendment Right to Counsel

In Grounds I and III, petitioner argues that his attorney was constitutionally

ineffective for not investigating Petitioner's competence or whether his plea was the

result of coercive threats before allowing him to plead guilty.  Petitioner's challenges

are without merit and do not provide a basis for disturbing petitioner's conviction or

sentence.

### A.       Coerced and Unknowing Guilty Plea

Petitioner argues that his guilty plea was not knowing and voluntary.  A state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered voluntarily and intelligently under the totality of the circumstances.  *Brady v. United States,* 397 U.S. 742, 749 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969).

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself.  *Id.*  A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328.  Moreover, the AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir.1998). A determination of a factual issue made by a state court is presumed to be correct, and a petitioner may overcome this presumption only by presenting "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004).  This presumption of correctness

is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n. 4 (6th Cir. 1989).

Petitioner sought to withdraw his plea at sentencing based on questions regarding his competence and coercive threats. (ST, 4-12, ECF No. 27-7, PageID.212-214.) The trial court, without the benefit of plea hearing transcripts, denied Petitioner's motion to withdraw his guilty plea. The trial court found, as it had found at the plea hearing, that the plea was knowing and understanding.

After sentencing, Petitioner moved for resentencing or, in the alternative, to withdraw his plea. When the trial court issued its opinion denying the motion, it had the benefit of the plea transcript and the report from the Center for Forensic Psychiatry that concluded Petitioner was "competent to stand trial and criminally responsible for his actions." (Op. and Order, ECF No. 27-9, PageID.225.) In light of the plea record and the trial court's findings on petitioner's motions, his plea is presumptively knowing and voluntary. Petitioner has failed to present clear and convincing evidence that would overcome that presumption. Further, petitioner has not come close to satisfying his burden under 28 U.S.C. §2254(d).

## B.   Ineffective Assistance of Counsel

Petitioner's claim of ineffective assistance fares no better. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's

deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). On the prejudice prong, the court focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "[T]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To satisfy the prejudice requirement in the context of a guilty plea, a petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59

The trial court flatly rejected Petitioner's ineffective assistance claims. (Op. and Order, ECF No. 27-9.) Because the Michigan courts decided petitioner's claim of ineffective assistance of counsel on the merits, the decisions must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 131 S. Ct. at 784. To receive habeas relief, petitioner must demonstrate that the state courts' decisions were contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the

state-court decisions applied *Strickland* incorrectly.  Rather, petitioner must show that the state courts "applied Strickland to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012).  This creates a "high burden" for petitioner.  *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (2013).

"[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*).  The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 131 S. Ct. 733, 740 (2011); *see Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013).

Petitioner's counsel was not ineffective for not further investigating the voluntariness of his plea nor did counsel allow Petitioner to plead guilty under duress. Petitioner's testimony established that he had not been forced to plead guilty and that he was pleading guilty freely and voluntarily because he was guilty.  (PT, 7-8, ECF No. 27-5, PageID.207).  Similarly, the report from the Center for Forensic Psychiatry provided compelling evidence of Petitioner's competence despite his autism.  Moreover,

the issue of Petitioner's autism was squarely before the trial court at sentencing by the direct statements of Petitioner, the argument of his counsel, and the sentencing information report.  The state court decision finding that petitioner's counsel was not ineffective easily withstands scrutiny under the doubly deferential AEDPA standard of review.

## II.    Sentencing

In Ground II, petitioner challenges his sentence.  He argues that his 3 to 20 year sentence for bank robbery, 4th habitual offender, constitutes cruel and unusual punishment because it is not an individualized sentence.

### A.    Individualized Sentence

Petitioner's argument that his sentence was not individualized is a state law claim.  He acknowledges as much in his amended petition: "State sentencing laws requir[e] that each person convicted be provided and "individualized" sentence [sic], specially tailored to their circumstances and offense. . . . [t]he Defendant assertts [sic] he was deprived of an individualized sentence [sic], which is a right secured under Michigan's law." (Am. Pet. Attach. A, Ecf No. 14-1, PageID.75.)  Such state-law claims are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief);  *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law).  There is no

-20-

constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).  Accordingly, Petitioner's contention that his sentence was not individualized as required by state law is not cognizable on habeas review.

### B.     Eighth Amendment

Nor can Petitioner show that his sentence violates his Eighth Amendment right against cruel and unusual punishment. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (principle applies only in " 'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality' ") (quoting *Rummel*

*v. Estelle*, 445 U.S. 263, 285, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.' " *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). In this case, Petitioner is not facing the death penalty or a sentence of life imprisonment without the possibility of parole. An analysis of sentence proportionality is, therefore, unnecessary.

Petitioner also suggests his sentence is cruel and unusual because it constitutes punishment for a mental disorder. (Am. Pet., ECF No. 14-1, PageID.77-78.) Petitioner's characterization is not accurate. Faced with a similar argument, the *Organek* court responded as follows:

> [A]lthough Organek's psychiatric history was evidently a factor that the district court considered when imposing sentence, Organek was not sentenced because of his mental illness; he was sentenced because he pled guilty to the crime of possessing an unregistered firearm. Organek's mental illness was not the crime to which he pled guilty.

*Organek*, 65 F.3d at 62. The same is true here. Petitioner was not sentenced because of his mental illness; he was sentenced because he pled guilty to robbing a bank. His Eighth Amendment claim to the contrary finds no support in the record. Petitioner is not entitled to habeas corpus relief.

## III.   Certificate of Appealability

Should the Court deny the petition, it must determine whether a certificate of appealability should be granted. 28 U.S.C. § 2253(c)(2). A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

Examining petitioner's claims under the standard in *Slack*, reasonable jurists would not conclude this Court's assessment of petitioner's claims to be debatable or wrong. Accordingly, I recommend that the Court deny petitioner a certificate of appealability.

-23-

## Recommended Disposition

For the foregoing reasons, I recommend that the petition be denied.

Dated:   December 6, 2016                         /s/  Phillip J. Green
                                                  United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).